UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

UNITED STATES

v. No. CR 99-024S

ARTHUR D'AMARIO

MOTION TO CORRECT ERROR OR OVERSIGHT IN JUDGMENT

Pursuant to F.R.Crim.P. 36, Defendant requests that the court amend the Judgment entered June 8, 2005 as follows: (1) that the sentence be corrected to 12 months plus 1 day of imprisonment; and (2) that the order for Defendant to serve his first four months of supervised release in a halfway house be stricken as superfluous and redundant. In support of his motion, Defendant relies on his accompanying Memorandum of Law.

DEFENDANT, PRO SE,

[signature] 6-30-05

Arthur D'Amario 02989-070
Wyatt Detention Facility
950 High St.
Central Falls, RI 02863

CERTIFICATION

I certify that on the 1 day of July, 2005, I mailed a copy of this motion & memorandum to AUSA Adi Goldstein, 50 Kennedy Plaza, 8th floor, Providence, RI 02903.

[signature]

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

UNITED STATES

v. No. CR 99-024S

ARTHUR D'AMARIO

MEMORANDUM

Counsel's ACJA appointment having terminated, Defendant moves pro se to correct what he believes were oversights and errors in the June 8 Judgment and, if so, such defects can be remedied under Rule 36.

1. GOOD-CONDUCT-TIME CREDIT:

Days after sentencing, Prof. Andrew Horwitz, who does pro bono work for Defendant in state court, mailed him a copy of White v. Scibana, 390 F.3d 997 (7th Cir. 2005) (interpreting BOP's good-conduct-time ["gct"] policies). (Wyatt Detention Facility eliminated its law library in 2004 for bedspace.)

Good-time credit is an incentive for model prisoner behavior and applies to sentences "of more than 1 year[.]" 18 U.S.C. § 3624(b)(1)(A); White at 999. But Defendant's Judgment declares a term of exactly 12 months without the requisite and normally obligatory one extra day. As White explained, the extra day would entitle Defendant to 47 days gct, for a likely discharge date of Feb. 11, 2006. 390 F.3d, at 1000 n.1.

Defendant asserts that on June 8 the court simply was unaware of the effect on gct by a 12-month term and that the trial judge has no reason to deny him the good-behavior incentive. After 6½ years of detention, Defendant has but two minor Incident Reports, being out of bounds (2000), and sealing non-legal mail (2001). Other similarly situated inmates who've engaged in fisticuffs and vandalism are nevertheless earning and receiving gct (having been sanctioned by alternative methods, like loss of commissary and phones). This cannot be the result intended by the court.

Defendant's first revocation term, imposed Oct. 2, 2003, was strangely measured at 11 months, so he got no gct then, either, despite compiling yet another BOP record of clear conduct for those 11 months. Had he gotten the maximum of 12 months in 2003, as requested by Probation, he may have served less then the prescribed 11, for the April 22, 2004, resentencing in New Jersey prolonged his custody beyond a year and gct was computed into the New Jersey term's calculation - but only toward that case.

From Feb. 19, 1999, through Mar. 24, 2000, Defendant earned 59 days gct that was never credited to either his state or federal sentence and, as the court is aware, those 13 months of custody were not applied to the R.I. federal sentence against the expressed desire of Judge DiClerico.

Failure to correct the oversight and add 1 day would therefore deny Defendant Equal Protection and due process. He'd have absolutely no reason to show up for his BOP daily work assignment and could serve out his time in a Seg cell listening to his radio. This is precisely why BOP offers gct, because the prisons could not operate without it.

2. CONDITION FOR HALFWAY HOUSE:

When Defendant approaches the "last ten percentum" of his sentence, BOP has authority to furlough him to ccc, as in 2003. 18 U.S.C. § 3624(c). He has qualified for Coolidge House 4 previous times, including 2004, but U.S. Probation has always deterred BOP from assigning him there. Presumeably, in late 2005 BOP will again find Defendant qualified for ccc referral.

To then require him to submit to more and needless ccc after imprisonment is redundant and would serve no purpose. More seriously, the court may have misunderstood the impact of the June 8 prison sentence.

The 2003 and '05 revocation terms virtually max out Defendant in both jurisdictions, for his felonies are Class C and D. The most violation time the court may impose is 24 months. 18 U.S.C. § 3583(e)(3); U.S. v. McClellan, 164 F.3d 308, 310 (6th Cir. 1999). If Defendant didn't want to serve his supervised release in ccc, all he'd have to do is refuse to report, then walk into the Marshals' office for a short ride to Wyatt Detention Facility. After just one more month in prison, he'd be at 24 months and "max'd out." In other words, he can cast aside 4 months of post-incarceration ccc - a form of house arrest - by merely consenting to 1 more month in prison. He'd have no reason to even attempt to comply with s.r. conditions if faced with the 4 months of ccc. Such an odd situation, in which the prisoner controls his destiny rather than the court, could not have been intended on June 8. Minus the post-release ccc of 4 months, and with a gct discharge of Feb. 11, 2006, Defendant would be motivated to comply with standard s.r. conditions for 13 months as he lives in his Rhode Island apartment.

The 4 months of ccc, not even desired by the Attorney General until prodded by the trial judge, is redundant, superfluous, can be easily evaded, and developed from oversight of the fact that Defendant is max'd out next winter (and can be transferred to Coolidge House by BOP under § 3624(c)). Said oversight is likewise correctable by striking the special condition through Rule 36.

CONCLUSION

Defendant's motion should be allowed on the papers without hearing.

DEFENDANT, PRO SE,

Arthur D'Amario, III

cc:
AUSA Adi Goldstein