UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

UNITED STATES

v. No. CR 99-024

ARTHUR D'AMARIO

MOTION TO DISQUALIFY THE U.S. ATTORNEY

Defendant moves for entry of an order disqualifying the U.S. Attorney for the district of Rhode Island from continuing to participate in the above-captioned cause and connected post-judgment matters it has spawned, for reasons expressed in his accompanying memorandum of law.

Defendant, pro se,

4-3-06

Arthur D'Amario 02989070
Federal Detention Center
PO Box 562
Philadelphia, PA 19105

CERTIFICATION

I certify that on April 4, 2006, I mailed copies of this Motion & Memorandum to AUSA Adi Goldstein, 50 Kennedy Plaza, Providence, RI 02903.

defendant

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

UNITED STATES

v. No. CR 99-024

ARTHUR D'AMARIO

MEMORANDUM

In the spring of 2003, the local U.S. Attorney implemented legal action in this court to permanently banish Defendant from Rhode Island on the theory that he poses a danger to the federal judges of this very court who covered up a police conspiracy to frame him with anonymous, crank letters that no one has ever seen. The U.S. Attorney practices before those judges every day.

On April 24, 2003, CUSPO Weiner told AFPD Lori M. Koch in a phone interview that Defendant poses a danger to the federal judges and AUSA Browne and that neither governmental entity wants him back in RI. The U.S. Attorney represents CUSPO Weiner.

Defendant's same prosecutor, AUSA Leavey, has been simultaneously prosecuting Defendant's 2003 attorney, Ken O'Donnell. After O'Donnell failed to object to Magistrate Lovegreen's July 2003 R & R for imposition of the harshest sentence allowed by law (directly benefiting Leavey), O'Donnell began obtaining a series of impressive victories in the First Circuit that saved him $253,000.

On July 25, 2000, AUSA Leavey wrote a letter to Main Justice describing Defendant as a threat to his office. His superiors continue to suppress the report that was included.

The Court has recognized that "[t]he U.S. Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all[.]" Berger v. U.S., 295 U.S. 78, 88 (1935). Later, it suggested that the Due Process Clause imposes some limits on the partisanship of prosecutors and "[a] scheme injecting a personal interest, financial or otherwise, into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision and in some contexts raise serious constitutional questions." Marshall v. Jerrico, Inc., 466 U.S. 238, 249-50 (1980). In Young v. U.S., 481 U.S. 787, 802-09 (1987), the

Court applied these principles to hold that the appointment of a civil party's attorney to prosecute a criminal contempt arising out of the civil action deprived the defendant of his right to a "disinterested prosecutor." Given the "considerable discretion" exercised by a prosecutor in all matters related to a criminal case, "appointment of an interested prosecutor creates an appearance of impropriety[.]" Id. at 806.

The Attorney General has promulgated 45 C.F.R. § 45.2, which provides that generally no employee shall participate in a criminal prosecution if he has a personal or political relationship with any person who: (1) is substanially involved in the conduct that is the subject of the investigation, or (2) has a substantial interest in the outcome of the prosecution. 45 C.F.R. § 45.2(a).

Here, prosecutors have professional relationships with the alleged victim-judges that, at a minimum, create an appearance of a conflict of interest or loss of impartiality. These prosecutors regularly appear before those judges and cannot reasonably be expected to ignore the fact that they are enforcing the judges' desire to banish Defendant and sabotage all of his Section 8 housing opportunities.

Perhaps more seriously, on Nov. 28, 2001, AUSA Browne testified at trial in Camden, NJ, that she has purchased a gun and taken out a permit to carry a concealed weapon because of her hysterical fear of Defendant (which may be a contrivance). Browne and Defendant both live in RI. Respondent's conflict is highlighted by the fact that AUSA Leavey and Main Justice still will not disclose the July 2000 "report" on Defendant's New Jersey offense - a potentially exculpatory document withheld in violation of F.R.Crim.P. 16 by AUSA Goldklang.

Defendant has moved for DNA testing under 18 U.S.C. § 3600. Respondent will not agree to the testing, even though disinterested prosecutors nowadays routinely assent to DNA analysis.

Needing to identify a conflict, Defendant has exposed several.

DEFENDANT, pro se,

Arthur D'Amario III

cc:
AUSA Adi Goldstein
50 Kennedy Plaza
Providence, RI 02903