EX 17

**Forensic Science Applications**
Examination of Questioned Documents

COPY

# REPORT

**TO:** Sergeant Kenneth Collins
Attleboro Police Department
12 Union Street
Attleboro, Massachusetts 02703

**DATE:** February 26, 1999

FSA #907 and 907A

**RE:** Arthur D'Amario-
Typewriter Examination

**CONTRIBUTOR CASE #**

**EVIDENCE RECEIVED:** From Sgt. Kenneth Collins on February 12, 1999 at Attleboro, Massachusetts and via U.S. Postal Service certified mail on February 22, 1999

**Specimens:**

Specimens Received February 12, 1999

| | |
|---|---|
| Q1 | One (1) used Smith Corona correctable typewriter ribbon |
| Q2 and Q3 | One (1) envelope addressed to "Debbie Sellers......." And accompanying Halloween card |
| Q4 and Q5 | One (1) envelope addressed to "Miss Deb Sellers........" postmarked Jan. 14, 1999 and accompanying birthday card |
| K1 | One (1) Smith Corona typewriter model #5A-1 with ribbon cartridge and correcting tape cassette |
| Also submitted: | -open box containing five (5) Smith Corona correctable film ribbons<br>-open box containing two (2) Smith Corona lift-off correcting cassettes |

RR 3, Box 110-N Vineyard Haven, Massachusetts 02568 Tel. 508-693-5635 • Fax 508-693-5636

17

COPY

Specimens Received February 22, 1999

K2 Numerous original and photocopied typewritten letters and envelopes known to have been sent by Arthur D'Amario

**RESULTS OF EXAMINATION**

The typewritten text which appears on specimens Q2, Q4 and Q5 is not present on the Q1 typewriting ribbon which was found in the trash during the search of Arthur D'Amario's residence or on the ribbon removed from the K1 typewriter.

The style of typewriting on specimens Q2, Q4 and Q5 is different from the style of type produced by the K1 typewriter using the printwheel that was in the machine at the time it was seized. The style of typewriting on specimens Q2, Q4 and Q5 is different from any style that is commonly used in a Smith Corona machine, such as K1. The style of typewriting present on the K2 documents is consistent with the style on the Q1 ribbon and the K1 ribbon;therefore, the machine that produced these documents did not produce the Q2, Q4 and Q5 typewriting.

No indented writing was detected on specimens Q2 through Q5. One machine-produced indentation was noted on specimen Q5, and a lift of this indentation is being provided to you with the evidence. It is not known if this impression was made during the manufacturing process or if it was made when the Q5 card was inserted through the roller of a typewriter.

The U.S. postage stamps present on specimens Q2 and Q4 have torn edges that could be compared to other stamps that may become available to you. No stamps on the original envelopes contained in specimen K2 are like those on specimens Q2 and Q4.

The glue lines, as well as the stamps on specimens Q2 and Q4 are the type that have to be moistened for adherence; and, therefore, may contain DNA substance from the person who wet them. DNA profiles, if present, on these specimens, could be compared to DNA that may be present on the K2 envelopes.

Specimens Q4 and Q5 do not appear to have been processed for latent fingerprints. You should contact the DNA laboratory prior to having any fingerprint examinations done to see whether they prefer to do their analysis prior to fingerprint processing.

17

COPY

**ADMINISTRATIVE**

Specimens Q1 through Q5, K1 and K2, as well as the Also Submitted items are being personally delivered to your office at the Attleboro, Massachusetts Police Department. It is noted that the ribbon presently in the K1 typewriter was used to make known typewriting exemplars for examination purposes and was one of the ribbons received in the Also Submitted items.

Alan T. Robillard